IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DG COGEN PARTNERS, LLC, a
Delaware company,                                              No.  03:11-cv-00642-HZ

                    Plaintiff,

         v.                                                    OPINION & ORDER

LANE POWELL PC, a Washington
corporation, and JONATHAN
NORLING,

                    Defendants.


Peter R. Jarvis
Dayna E. Underhill
HINSHAW & CULBERTSON LLP
1000 S.W. Broadway, Suite 1250
Portland, Oregon 97205-3000

         Attorneys for Plaintiff

/ / /


1 - OPINION & ORDER

David B. Markowitz
Renee E. Rothauge
Kerry J. Shepherd
MARKOWITZ, HERBOLD, GLADE
     & MEHLHAF, P.C.
1211 S.W. Fifth Avenue, Suite 3000
Portland, Oregon 97204-3730

     Attorneys for Defendant Lane Powell PC

Larry A. Brisbee
BRISBEE & STOCKTON LLC
139 N.E. Lincoln Street
P.O. Box 567
Hillsboro, Oregon 97123-0567

     Attorney for Defendant Jonathan Norling

HERNANDEZ, District Judge:

     Following the January 7, 2013 Opinion & Order granting partial summary judgment to defendants on plaintiffs' legal malpractice claim and granting plaintiffs' motion to file a second amended complaint, remaining plaintiff DG Cogen Partners, LLC ("DG Cogen") filed a Third Amended Complaint (TAC)[1] which defendants move to dismiss.[2] Because I agree with defendants that the foreclosure of DG Cogen's assets by former plaintiff 1211658 Alberta LTD ("Albert") deprives DG Cogen of the ability to establish that defendants' alleged negligence

---

     [1] On January 9, 2013, during a telephone conference regarding case scheduling, the parties indicated that they had differing interpretations of the January 7, 2013 Opinion. They proposed that a motion to clarify be filed, or alternatively, that plaintiff be given leave to file a Third Amended Complaint which defendants could move against. I agreed to the latter option and thus, while the January 7, 2013 Opinion granted plaintiffs' motion for leave to file a Second Amended Complaint, the pleading that plaintiff actually filed was a Third Amended Complaint.

     [2] Defendants move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or alternatively, under Rule 12(b)(1) for lack of standing. Because I consider evidence outside the pleading to resolve the motion, I consider this to be a Rule 12(b)(1) motion.

2 - OPINION & ORDER

caused harm to DG Cogen, I grant the motion.  Further, I grant the motion with prejudice because
I agree with defendants that after four iterations of the complaint, and with a proposed fifth one
pending, any further amendments would be futile.

STANDARDS

A challenge to standing is appropriately raised pursuant to Federal Rule of Civil
Procedure 12(b)(1).  Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article
III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil
Procedure 12(b)(1)") (emphasis omitted); Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d
1115, 1122 (9th Cir. 2010) ("Because standing and ripeness pertain to federal courts' subject
matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss.").

To satisfy Article III standing, a plaintiff must show that it has suffered an "injury in fact"
and a "causal connection between the injury and the challenged action of the defendant."
Multistar Indus., Inc. v. U.S. Dep't. of Transp. 707 F.3d 1045, 1054 (9th Cir. 2013) (also noting
third requirement that it be likely, not speculative, that the injury will be "redressed by a
favorable decision") (internal quotation marks omitted).  The party who seeks to invoke the
subject-matter jurisdiction of the court has the burden of establishing that such jurisdiction exists.
Chandler, 598 F.3d at 1122.  The court may hear evidence regarding subject matter jurisdiction
and resolve factual disputes where necessary.  Kingman Reef Atoll Invs., LLC v. United States,
541 F.3d 1189, 1195 (9th Cir. 2008); Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136,
1139  (9th Cir. 2003) (jurisdictional challenge under Rule 12(b)(1) may be made by presenting
extrinsic evidence).

/ / /

DISCUSSION

The First Amended Complaint, the operative pleading when the partial summary judgment motion and the January 7, 2013 Opinion were filed, contained a single claim of negligence based on defendants' alleged actions in committing DG Cogen to an unreasonably unfavorable release of claims against various Hess entities. First Am. Compl. at ¶ 14. As damages, DG Cogen sought the sums it would have been able to recover for several claims it had brought in the King & Spalding Action. Id. at ¶ 17.

The January 7, 2013 Opinion concluded that DG Cogen did not own those claims at the time the King & Spalding Action was filed on July 3, 2008. Jan. 7, 2013 Op. & Ord. at 8-20. As explained in that Opinion, in December 2005, Alberta became the secured party to a security agreement DG Cogen executed in 2004. Id. at 10-11. On June 6, 2008, Alberta foreclosed upon the collateral subject to the security agreement which included all of DG Cogen's general intangibles (with the exception of any malpractice claim). Id. at 19. The general intangibles included the claims filed in the King & Spalding Action. Id. Because the foreclosure by Alberta meant that DG Cogen did not actually own the claims it brought in the King & Spalding Action when that Action was filed, DG Cogen lacked Article III standing in that Action. Id. at 8-20. As a result, the court overseeing the King & Spalding Action would have dismissed DG Cogen as a plaintiff from that Action for failing to establish an injury-in-fact. Id. Accordingly, DG Cogen could not establish causation in the negligence claim it brought against defendants in the instant case. Id.

My conclusion in the January 7, 2013 Opinion left intact only a $10,000 claim by DG Cogen against defendants for damages unrelated to the King & Spalding Action and which

4 - OPINION & ORDER

defendants had not moved against.  However, during the course of the summary judgment

briefing, DG Cogen moved for leave to file a Second Amended Complaint (SAC).  In addition to

correcting a scrivener's error, the proposed SAC sought to add allegations expanding the theory

of negligence to encompass defendants' alleged failure to timely "advise [DG Cogen] of the

existence and potential impact of applicable statutes of limitation on [DG Cogen's] ability to

pursue the claims against potentially responsible parties later set forth in the King & Spalding

Action."  Pl.'s Mtn for Leave to File SAC at 2; see also Ex. 1 to Pl.'s Mtn for Leave to File SAC

at ¶ 14 (Proposed SAC; ECF #56) .

I understand that, as DG Cogen noted at the April 2, 2013 oral argument on defendants' motion

to dismiss the TAC, I could have "shut the door" on DG Cogen by denying the motion for leave

to file the SAC, I did not.  Instead, I concluded that the motion should be granted because DG

Cogen had not acted in bad faith or unduly delayed filing the proposed SAC, the amendments

were not futile, and any prejudice to defendants was ameliorated by the ability to alter the then-

existing case schedule and by my conclusion that the claims brought in the King & Spalding

Action remained out of the case and were not resurrected by the new allegations in the proposed

SAC.

I considered the new allegations in the proposed SAC to primarily address the timeliness

problems of the fraud-based and breach of express warranty claims brought in the King &

Spalding Action.  I understood that in response to defendants' summary judgment argument that

these claims were time-barred when filed in the King & Spalding Action, DG Cogen was

alleging that but for defendants' negligent failure to advise DG Cogen about the existence of the

claims eventually brought in the King & Spalding Action when they were still timely, and the

negligent failure to advise DG Cogen as to when those claims would become untimely, DG

Cogen would have filed those claims much earlier, well before they were time-barred.

Although I explained that "any allegations of damages based on the claims brought in the

King & Spalding Action are dismissed from the case and nothing in the newly asserted

allegations of negligence changes that holding[,]" Jan. 7, 2013 Op. & Ord. at 35, I was referring

to the claims that were actually brought in that Action and was not intending to foreclose DG

Cogen from seeking damages for what were essentially the same claims, based on this "failure to

advise" theory expressly alleged for the first time in the proposed SAC. Although I believed

there could be considerable proof problems, that was not at issue in the motion for leave to file

the SAC.

With the summary judgment briefing and the January 7, 2013 Opinion focused almost

entirely on the claims actually brought in the King & Spalding Action filed in the Northern

District of California in July 2008, I did not consider, and neither did the parties bring to my

attention, the effect of Alberta's foreclosure on DG Cogen's assets on any claims that might have

existed before the foreclosure. But, I consider the issue now. And, as a result, while I did not

take the earlier opportunity to close the door on DG Cogen, I close it in this Opinion.

In the TAC, DG Cogen alleges that but for the specifications of negligence alleged in

paragraph 14 of the TAC, DG Cogen would have "timely filed, pursued and prevailed upon

affirmative defenses and millions of dollars of claims or counterclaims, either within or outside

of the Arbitration, against Services, Microgen, Amerada, the Korean manufacturer of the engine

heads and its United States supplier." TAC at ¶ 15. The problem for DG Cogen, however, is that

given my earlier conclusion that Alberta acquired DG Cogen's assets in the foreclosure, DG

6 - OPINION & ORDER

Cogen cannot prove causation and cannot establish injury as to these claims, counterclaims, or affirmative defenses referred to in paragraph 15 of the TAC.

Regardless of whether the damages allegedly lost by virtue of defendants' negligence were to come from a claim or a counterclaim, within or outside of the arbitration, against any of the Hess entities or others, all of DG Cogen's general intangibles were foreclosed upon by Alberta in June 2008.  That means that no matter when any of these putative claims may have been filed, DG Cogen would have lost them to Alberta, regardless of any negligence of defendants.  As a result of the foreclosure, DG Cogen lost any ownership interest in any of the claims referred to in paragraph 15 of the TAC and thus, DG Cogen cannot establish that it suffered an injury-in-fact as a result of defendants' alleged negligence.  I agree with defendants that the foreclosure is a superseding cause of DG Cogen's harm.

I reject DG Cogen's argument that Alberta's foreclosure is not a superseding cause of DG Cogen's losses because DG Cogen actually lost those claims on February 4 or 5, 2008 when defendants allegedly negligently bound DG Cogen to settle its arbitration with Hess Services with an allegedly overly broad release.  Nothing in the record supports DG Cogen's position that the release contained in the proposed settlement documents was effective as of February 4 or 5, 2008.  DG Cogen had not executed the settlement agreement as of that date so there was, in fact, no agreement and no binding release.  See Ex. 26 to Sept. 14, 2012 Fox Decl. (DG Cogen's Sept. 5, 2008 Opp. to Hess App. to Enforce Settlement stating that "the parties never reached an understanding regarding the material terms of the agreement . . . [and] [t]hus, there was never a meeting of the minds.  Hess is well aware that there is no agreement to enforce.") (ECF #39). The arbitrator did not reach an interim decision enforcing the settlement agreement until

7 - OPINION & ORDER

September 26, 2008, and did not issue a final decision until December 17, 2008.  While the arbitrator enforced the version of the settlement agreement that Hess Services executed in February 2008, the arbitrator made no mention of the effective date being anything other than the date the arbitrator issued his decision.

Moreover, DG Cogen's current position is inconsistent with the position it took at summary judgment.  DG Cogen previously argued that Alberta foreclosed on only some, but not all, of DG Cogen's assets, choosing not to foreclose on the "claims that DG [Cogen] might have against one or more Hess entities or others, either within or outside of the then-pending arbitration[.]"  Oct. 12, 2012 Aron Decl. at ¶6 (ECF #44); see also Oct. 11, 2012 B. Kruper Decl. at ¶ 10 (Alberta and DG Cogen intended to leave the Hess-related claims "solely with DG, and that is what we did") (ECF #47).  Implicit in these statements and DG Cogen's argument was that DG Cogen owned the claims brought in the King & Spalding Action both immediately before and after the June 8, 2008 foreclosure.  This is completely contrary to its current argument that it lost the claims before Alberta foreclosed.

Finally, I further agree with defendants that the release, even if it was effective in February 2008, is not a transfer of ownership of the claims and thus, is not equivalent to the loss of the claims via foreclosure.  While I accept DG Cogen's representation that under California law, the release extinguished DG Cogen's claims, this is still not the same as Alberta obtaining them in the foreclosure.  Extinguished or not, they were still DG Cogen's claims until June 8, 2008 when Alberta foreclosed upon them.

Plaintiff also suggests that Alberta's foreclosure cannot be a superseding cause of DG Cogen's harm because the foreclosure was a reasonably foreseeable consequence of defendants'

negligence and a potential source of added harm to DG Cogen.  I disagree.

DG Cogen signed the original security agreement in July 2004 before defendants began representing DG Cogen.  Alberta became a secured creditor in December 2005.  This was also before defendants began representing DG Cogen.  See TAC at ¶ 5 (alleging that Lane Powell began representing DG Cogen in May 2006 and that Norling began representing DG Cogen before or in March 2006); see also Proposed SAC at ¶ 7 (alleging that both defendants represented DG Cogen from March 2006 through August 2008); First Am. Compl. at ¶ 7 (same). The allegations do not support a determination that either defendant was involved in creating the secured creditor relationship between DG Cogen and Alberta.

Additionally, DG Cogen does not allege that either defendant represented DG Cogen in connection with the foreclosure.  And, as previously discussed in the January 7, 2013 Opinion, Alberta was not a client of defendants.  Thus, there are no allegations supporting a determination that defendants were involved with Alberta's foreclosure of DG Cogen's assets.

As defendants note, DG Cogen has presented four versions of its allegations (in the Complaint, the First Amended Complaint, the Proposed SAC, and the TAC) and at no time has it alleged that defendants were responsible for the foreclosure or should have foreseen the foreclosure as a natural consequence of their alleged negligence.  Even the proposed Fourth Amended Complaint submitted by DG Cogen with its pending motion for leave to file that pleading fails to allege that defendants' negligence caused plaintiff to lose its collateral to Alberta or that this was a foreseeable consequence to defendants as a result of their negligence.  The foreclosure caused DG Cogen to be divested of the claims it once owned and there is no plausible

basis for contending that defendants' negligence caused the foreclosure or that the foreclosure was foreseeable to defendants as a logical consequence of their allegedly negligent conduct.  As a result, I agree with defendants that the rulings in the January 7, 2013 Opinion regarding the foreclosure by Alberta upon DG Cogen's assets mean that even if DG Cogen had timely filed all of the claims it refers to in paragraph 15 of the TAC, those claims belonged to Alberta as of June 6, 2008.  Accordingly, DG Cogen cannot establish that defendants' alleged negligence was the cause of the harm alleged in the TAC and therefore, cannot establish Article III standing.

Finally, I dismiss the TAC with prejudice and I deny DG Cogen's motion for leave to file a Fourth Amended Complaint.  DG Cogen has amended its Complaint several times.  The prior rulings in the case make clear that DG Cogen cannot plead a claim that will survive a motion to dismiss.   At this point, allowing any further amendments would be futile and create undue prejudice to defendants.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

10 - OPINION & ORDER

CONCLUSION

Defendants' motion to dismiss [85] is granted.  DG Cogen's motion for leave to file a

Fourth Amended Complaint [90] is denied.  The negligence claim is dismissed with prejudice

except for the part of the claim contained in the First Amended Complaint contending that

defendants' negligence caused plaintiff to hire King & Spalding to defeat Hess Services's motion

to enforce the settlement.  First Am. Compl. at ¶ 17b.  As explained in the January 7, 2013

Opinion, this claim is limited to $10,000.  Jan. 7, 2013 Op. & Ord. at 32.[3]

        IT IS SO ORDERED.

                Dated this _16_ day of _April_, 2013



                                        _____
                                        Marco A. Hernandez
                                        United States District Judge

---

    [3] I reject defendants' suggestion that with the claim limited to $10,000 this Court lacks
jurisdiction under 28 U.S.C. § 1332 because the amount in controversy is below the $75,000
jurisdictional minimum.  The amount in controversy is measured at the time of filing and
subsequent rulings which reduce the amount recoverable do not divest the Court of the
jurisdiction it had at the inception of the case.  In re Digimarc Corp. Derivative Litig., 549 F.3d
1223, 1236 (9th Cir. 2008); see also Charvat v. GVN Mich., Inc., 561 F.3d 623, 628 (6th Cir.
2009) ("events occurring subsequent to the institution of suit which reduce the amount
recoverable below the statutory limit do not oust jurisdiction") (internal quotation marks
omitted).