IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DG COGEN PARTNERS, LLC, a
Delaware company, and 1211658                    No.  03:11-cv-00642-HZ
ALBERTA LTD, a Canadian
corporation,

          Plaintiffs,

      v.                                             OPINION & ORDER

LANE POWELL PC, a Washington
corporation, and JONATHAN
NORLING,

          Defendants.


Peter R. Jarvis
Dayna E. Underhill
HINSHAW & CULBERTSON LLP
1000 S.W. Broadway, Suite 1250
Portland, Oregon 97205-3000

      Attorneys for Plaintiffs


1 - OPINION & ORDER

David B. Markowitz
Renee E. Rothauge
Kerry J. Shepherd
MARKOWITZ, HERBOLD, GLADE
      & MEHLHAF, P.C.
1211 S.W. Fifth Avenue, Suite 3000
Portland, Oregon 97204-3730

      Attorneys for Defendant Lane Powell PC

Larry A. Brisbee
BRISBEE & STOCKTON LLC
139 N.E. Lincoln Street
P.O. Box 567
Hillsboro, Oregon 97123-0567

      Attorney for Defendant Jonathan Norling

HERNANDEZ, District Judge:

      Plaintiffs DG Cogen Partners, LLC ("DG Cogen") and 1211658 Alberta LTD ("Alberta")
brought this legal malpractice action against Defendants Lane Powell PC and Jonathan Norling,
one of its former attorneys.  Final Judgment in favor of Defendants was entered on June 20,
2013.  Defendants have timely filed a Bill of Costs requesting $101,107.14.  For the reasons
more thoroughly explained below, I grant in part and deny in part Defendants' Bill of Costs and
award Defendants $53,575.02.

STANDARDS

      Pursuant to Federal Rule of Civil Procedure 54(d)(1), "costs - other than attorneys' fees -
should be allowed to the prevailing party."  There is a presumption that the prevailing party will
be awarded its costs.  <u>Save Our Valley v. Sound Transit</u>, 335 F.3d 932, 944-45 (9th Cir. 2003).
As a result, the losing party must show why costs should not be awarded.  <u>Id</u>.  Additionally,
although the district court must specify the reasons for its refusal to tax costs, it is not required to

2 - OPINION & ORDER

do so when it abides by the presumption and taxes costs to the losing party. Id. at 945.

The court has broad discretion to allow or to disallow a prevailing party to recoup costs of litigation, but the court may not tax costs beyond those authorized by 28 U.S.C. § 1920. Frederick v. City of Portland, 162 F.R.D. 139, 142 (D. Or. 1995); see also Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 440-42 (1987) (costs not listed in 28 U.S.C. § 1920 may not be taxed to the losing party unless they are specifically authorized by some other statute or by contract).

DISCUSSION

I.  Format/Presentation of Bill of Costs and Objections

I begin with a general observation that the briefing and supporting documents submitted in connection with Defendants' Bill of Costs made it extremely difficult to determine the necessary and reasonable costs.  To start, Defendants filed two separate cost bills, one for $101,107.14 and the other for $83,901.68.  Although there are two Plaintiffs, this is just one case and it struck me as highly unusual for a prevailing party or parties to file two separate cost bills. And, statements by Defendants indicated that these were independent and not overlapping costs. In their "Statement in Support of Bill of Costs," Defendants stated that they were "entitled to costs as set forth in the accompanying cost bill pursuant to 28 U.S.C. § 1920 and as itemized in Exhibits 1 and 2 to the Declaration of Renee Rothauge."  Defs.' Stmt. in Supp. of Bill of Costs at 2.  The exhibits attached to their Statement were two separate cost bills.  Additionally, Exhibits 1 and 2 to the June 20, 2013 Rothauge Declaration are separate summaries of items listed on each individual Bill of Costs.  Moreover, the June 20, 2013 Rothauge Declaration itself listed the sums separately, stating that Lane Powell was entitled to $101,107.14 in costs against DG Cogen

3 - OPINION & ORDER

and separately stating that Lane Powell was entitled to $83,901.68 in costs against 1211658

Alberta Ltd.  June 20, 2013 Rothauge Decl. at ¶¶ 6, 7.  Nothing in Defendants' Bill of Costs

suggests anything other than that Defendants were seeking a separate independent sum from each

of the two Plaintiffs.

As it turns out, Defendants are not in fact seeking two separate cost awards.  They

apparently filed two separate cost bills in an effort to show what costs are attributable to both

Plaintiffs and what costs should be born by only DG Cogen after Alberta's January 7, 2013

dismissal from the case.  The confusion created by Defendants' initial filing was not clarified by

Defendants, but only by Plaintiffs who state that in response to their shock at the proposed cost

bills, their counsel undertook a detailed review of the submissions and after many hours of

unnecessary analysis, determined that Defendants were seeking duplicate rather than separate

costs from the two Plaintiffs.  Pls.' Objs. at 2.  Plaintiffs' counsel then contacted Defendants'

counsel who clarified that Defendants sought only one total recovery of $101,107.14 and of that

amount, $83,901.68 was intended to be joint and several as between the two Plaintiffs.  Id.; July

15, 2013 Underhill Decl. at ¶ 4.  Defendants' failure to make apparent at the outset that the total

amount sought is for $101,107.14 led to unnecessary confusion for both the Court and Plaintiffs

and created completely unnecessary work for Plaintiffs.

Based on Plaintiffs' representation that Defendants seek only one total recovery of

$101,107.14, I ignore the second cost bill for $83,901.68 as duplicative.  Costs awarded in this

Opinion which Defendants incurred before Alberta's dismissal from the case are imposed jointly

and severally, and not duplicatively, against both Plaintiffs.

Next, while Defendants have submitted hundreds of pages of supporting documents along

4 - OPINION & ORDER

with summaries of the costs they seek, they have not correlated the supporting documents to the summaries. The summaries are helpful, but the failure to cross-reference the underlying documentation creates problems. For example, in the Summary for the $101,107.14 Bill of Costs (hereinafter "Summary"), Defendants list fifteen entries for internal copy costs paid by Lane Powell. Ex. 1 to June 20, 2013 Rothauge Decl. at 2. Each one contains a date showing a month and year paid as well as an amount. Id. But, the entries do not show the date of the month that payment was made. For example, one entry shows a payment of $334.95 made on "2/00/2012." Id. It is unclear if that payment was made on February 1, 2012, February 25, 2012, or February 28, 2012. This would not matter so much if Defendants had somewhere indicated which copy costs were paid on any of those months/years. Instead, Defendants submit 399 pages of copy cost entries, which are not in chronological order, with each page containing four separate pages which have been minimized, and each minimized page containing several separate itemized entries. Ex. 6 to June 20, 2013 Rothauge Decl. There is no guide showing which copy expenses were captured in any one of the fifteen entries in the Summary.

Similarly, Defendants list nine entries in the Summary for "document production and processing." Ex. 1 to June 20, 2013 Rothauge Decl. at 4-5. Again, the date paid is shown as the month, followed by "00," followed by the year. The next column shows the amount. But, there is no information given as to which of the thirty-five pages of documents supporting these nine entries were reflected in any one entry. Ex. 5 to June 20, 2013 Rothauge Decl.[1] Making this

---

[1] I assume that Exhibit 5 contains the supporting documents for the entries described in the Summary as "document production copying and processing." Defendants do not expressly provide that information, requiring me to reach this conclusion by first comparing the total amount of $14,418.02 shown on the Bill of Costs for "Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" to

even more confusing are the entries in the Summary for $1,492.68 shown as having been paid on "4/00/2012,"and for $4,554.33 shown as having been paid on "5/00/2012," when the supporting documents in Exhibit 5 contain no invoices for any "document production and processing" before May 31, 2012[2], and the total billed on the May 31, 2012 invoice is for $96.01.  Ex. 1 to Rothauge June 20, 2013 Decl. at 4; Ex. 5 to Rothauge June 20, 2013 Decl.

Finally, as one more example, Exhibit 6 to Rothauge's June 20, 2013 Declaration which contains the 399 pages of Lane Powell internal copy costs, is practically useless.  As described above, each original page was minimized to allow four minimized pages to be printed on a standard 8.5" x 11" piece of paper.  While I appreciate Defendants' efforts at conservation,[3] I wonder if anyone in Defendants' counsel's office actually tried to read what Defendants submitted.  The print is so small, and sometimes blurry, that even with a magnifying glass I can hardly read the entries.  To make matters worse, the four minimized pages per standard piece of

---

the subtotal shown on page five of the Summary, and then deducing from Rothauge's description of Exhibit 5 as "photocopying expenses necessarily incurred for use in this litigation" that Exhibit 5 contains the relevant supporting documents.  See June 20, 2013 Rothauge Decl. at ¶ 8.

I attempted to independently verify that Exhibit 5 supports the $14,418.02 request but my calculations could never produce that figure.  I added the totals shown on each of the thirty-five pages and obtained $16,779.01.  I then added the totals shown on all pages except for page fifteen which has all but $1,743.92 crossed out.  Using the $1,743.92 figure instead of the total of $3,306.47 for that page produced the sum of $15,216.46.  I next tried adding the totals shown on all pages except for page fifteen and page twenty-six which has two entries crossed out.  Using the $515.32 figure instead of the total $653.32 shown on page twenty-six, along with the change made to page fifteen, equaled $15,078.48.  It would have been helpful for Defendants to have correlated the underlying documents to the subtotals shown on the Summary.

[2]  The only exception is for the $1,131.60 which was invoiced on April 16, 2010 and which Defendants concede is not reimbursable.  Defs.' Resp. at 8-9.

[3]  Defendants could have submitted the same 399 pages by placing two minimized pages on one standard 8.5" x 11" piece of paper and then printing them double-sided which I would have allowed if requested.

6 - OPINION & ORDER

paper are not printed in the same direction.  The reader must read two, then flip the page around

to read the other two.  In addition, as noted above, the entries are not all in chronological order.

All this does is make the reader annoyed and less inclined to examine the material.

Plaintiffs are not immune from a lack of clarity either.  For example, in their objections to

the requested costs, they first object to $20,010.85 in internal copy costs paid by Lane Powell.

Pls.' Objs. at 2.  But in support, they cite to the Summary which shows a subtotal of $27,014.92

for that particular expense, not $20,010.85[4], creating confusion:  did Plaintiffs mean to cite to

Exhibit 2 and thus, do not actually object to the $7,004.07 difference?  Was Plaintiffs' cite to

Exhibit 1 accurate and the figure in their briefing in error, suggesting they meant to object to the

entire $27,014.92?  The latter comports more with the argument they make which is directed at

the entire category of expense, but nonetheless, their failure to pay attention to this type of detail

causes confusion.

Plaintiffs also object to $13,668.75 in what they argue are duplicative costs for

videotaped depositions where written transcripts were also obtained.  Pls.' Objs. at 5.  In support

of this objection, Plaintiffs cite to ten pages of Exhibit 7 to Rothauge's June 20, 2013 Declaration

which contains the court reporting invoices submitted by Defendants.  But, other than citing to

these pages, Plaintiffs do not identify any particular expenses.  Thus, for example, while

Plaintiffs cite to page 3 of Exhibit 7, they do not explain if their objection is to the entire

$1,992.25 shown on the invoice for Bradley Kruper's deposition, or only to the fees directly

related to the videography which are $770 ($50 for video equipment set up and removal; $600 for

---

[4]  $20,010.85 is the subtotal of the summary supporting the $83,901.68 Bill of Costs.  Ex.
2 to June 20, 2013 Rothauge Decl.; see also Ex. 2 to Defs.' Stmt in Supp. of Bill of Costs (Bill of
Costs for $83,901.68 showing fees for disbursements and printing as $20,010.85).

videography services; and $120 for four DVDs).  Although some of the pages Plaintiffs cite contain charges for only video-related expenses, when I total all charges on all the pages cited by Plaintiffs, the amount is either $11,173.75 or $12,396 depending on whether all of the costs for Bradley Kruper's deposition are included or only those related to the videotaping.  Pls.' Objs. at 5. In either case, the amounts shown on the invoices on the pages Plaintiffs cite to do not equal the $13,668.75 they object to for this expense.  It is unclear from the submitted documents how Plaintiffs arrived at that number.

II.  Plaintiffs' Objections

    A.  Printing and Copying Costs

    Defendants seek $27,014.92 for "[f]ees and disbursements for printing," and $13,286.42 for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  Ex. 1 to Defs.' Stmt. in Supp. of Bill of Costs.[5]  The Summary indicates that the $27,014.92 is for "internal copy costs paid by Lane Powell," and the $13,286.42 is for "document production copying and processing."  Ex. 1 to June 20, 2013 Rothauge Decl. at 2, 4-5.  Plaintiffs object to all of the costs sought in both of these categories.

    A prevailing party may recover "[f]ees and disbursements for printing" as well as "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]"  28 U.S.C. §§ 1920(3), (4).  "Copying costs for documents produced to opposing parties in discovery, submitted to the court for consideration of motions, and used as exhibits at trial are recoverable."  U.S. ex rel. Berglund v. Boeing Co., No.

---

[5]  The latter figure of $13,286.42 is the $14,418.02 originally requested for fees for exemplification and copies less the $1,131.60 that Defendants concede in their response was improperly included.

03:02–cv–00193–AC, 2012 WL 697140, at *4 (D. Or. Feb. 29, 2012) (citing cases). "However, recoverable copying costs do not include extra copies of filed papers, correspondence, and copies of cases since these are prepared for the convenience of the attorneys." Id. (internal quotation marks omitted). "Recoverable copying costs also do not include costs associated with in-house photocopying for use by counsel." Id.

Plaintiffs object to the $27,014.92[6] in internal Lane Powell copy costs because Defendants do not establish what the documents were or the purpose of the copies. As a result, Plaintiffs contend that Defendants fail to establish that the documents were obtained and the copies made for a compensable purpose. Plaintiffs object to the $13,286.42 in costs designated as "document production copying and processing" because Defendants similarly fail to establish what the documents at issue were or the purpose of the copies. Additionally, Plaintiffs argue that the fact that this category of costs is based on money paid to two outside copy vendors does not transform the otherwise non-recoverable cost into a recoverable one.

In support of their Bill of Costs, Defendants state that when the case was dismissed, the parties had conducted twenty depositions in various states, using almost 390 deposition exhibits, about 150 of which were submitted in the King & Spalding depositions alone. June 20, 2013 Rothauge Decl. at ¶ 4. The parties were in the process of scheduling at least seven additional depositions when the case was dismissed. Id. at ¶ 5. Defendants state that all the costs sought

---

[6] As indicated above, the amount Plaintiffs cite as objectionable is the total amount sought for this category of expense on the Bill of Costs seeking $83,901.68. The document they cite is the Summary of expenses for the Bill of Costs totaling $101,107.14. Because the nature of Plaintiffs' objection is to the entire category of expense and not to particular items, I assume the $20,010.85 amount is in error and that Plaintiffs meant to object to the $27,014.92 amount shown on the Summary.

were "actually and necessarily incurred in this case for the defense."  Id. at ¶ 15.

In support of the internal Lane Powell copy costs sought under 28 U.S.C. § 1920(3), Defendants state that Lane Powell incurred and paid for internal copy costs for photocopying of documents for use as exhibits for depositions, court, and summary judgment submissions.  Id. at ¶ 9.  In support of the costs sought under 28 U.S.C. § 1920(4) for "document production and copying," Defendants state that these are photocopying expenses incurred for use in the litigation and are related to expenses for document production by third parties in the course of producing documents, for depositions, and for photocopying related to court submissions for five motions. Id. at ¶ 8.  Additionally, in response to Plaintiffs' objections, Defendants explain that internal copies were made of documents used in depositions or going to be used in depositions still to be taken, for "multiple" summary judgment motions and other motions, as well as court copies. Aug. 2, 2013 Sec. Rothauge Decl. at ¶ 4.  Hundreds of exhibits were used in the depositions requiring large quantities of photocopying for witnesses, witnesses' counsel, opposing counsel, and court reporting services.  Id.  The summary judgment motion Defendants were preparing to file in April 2013 was sixty-seven pages long in draft form and would have included hundreds of pages of exhibits.  Id.

Several aspects of Defendants' copy-related requests are troubling.  First, there appears to be overlap between the $27,014.92 internal Lane Powell costs sought under 28 U.S.C. § 1920(3) as fees and disbursements for printing and the $13,286.42 sought for "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case," allowed by 28 U.S.C. § 1920(4).  The Lane Powell internal copy costs were for

documents used as deposition exhibits and court and summary judgment submissions. June 20, 2013 Rothauge Decl. at ¶ 9. But, the other photocopying costs were also for document production, deposition documents, and court submissions relating to several motions. Id. at ¶ 8. On its face, the cost bill appears to request duplicate document expenses. And, because the supporting documents for either category of cost do not identify the documents[7], determining whether the requests overlap is impossible.

Second, although some decisions from the District of Oregon have suggested that in cases of a certain size, copying costs may be awarded based on counsel's representation that the copy costs were necessarily incurred and without an explanation of the nature and purpose of each copy made, the general rule is that such conclusory representations are insufficient. E.g., Berglund, 2012 WL 697140, at *4 ("A party's conclusory assertion that all copies were reasonably necessary to its case is, by itself, insufficient") (citing cases); but see Pacificorp v. Nw. Pipeline GP, No. 03:10–cv–00099–PK, 2012 WL 6131558, at *4 (D. Or. Dec. 10, 2012) (because of the size of the case, court awarded $5,764.13 for copying based on counsel's attestation that the copies were for potential deposition exhibits); adidas Am., Inc. v. Payless Shoesource, Inc., No. 03:01-cv-01655-KI, 2009 WL 302246, at *5-7 (D. Or. Feb. 9, 2009) (allowing approximately $267,000 in printing and copying costs based on counsel's representations that the costs were necessarily incurred in the case).

---

[7] In their response to Plaintiffs' objections, Defendants note that the third-party vendor invoices reflect the Bates numbers of the documents processed, giving Plaintiffs the information they need to identify the copies made. My examination of Exhibit 5 shows that the Bates numbers appear sporadically, not on every invoice in which conversions or copies were made. Moreover, Bates numbers by themselves are not useful to the Court in identifying documents.

Because this was a legal malpractice case, the inherent "case within a case" created a certain amount of complexity. Nonetheless, the other cases in which printing and copying costs were awarded based solely on an attestation that they were reasonably and necessarily incurred are distinguishable. In Judge Papak's Pacificorp case, the $5,764.13 amount was not inherently suspicious or unreasonable and there was no suggestion that the presentation of the cost bill was confusing or reflected possible overlapping costs. In Judge King's adidas case, the litigation spanned more than seven years and included a trademark infringement trial that lasted sixteen days and was followed by significant post-trial litigation regarding a permanent injunction and other issues. The instant case was resolved on motions without a trial and while perhaps "document heavy," counsel's representation that the copying was necessarily incurred is not sufficient to establish the nature and purpose of the documents.

Third, the sheer size of Defendants' copy request raises questions because it bears no correlation to what I calculate is a reasonable number of copies. Defendants represent that they conducted twenty depositions and used almost 390 deposition exhibits. They do not correlate those 390 deposition exhibits to either category of their copy and print cost requests. They also fail to provide an average number of pages per deposition exhibit. Their omissions have forced me to calculate, based on the record, a reasonable number of copies.

I examined all of the sixty-two exhibits Defendants filed in support of their summary judgment motion. Defendants' counsel identified twenty-two of those exhibits as having been a deposition exhibit. See Sept. 14, 2012 & Oct. 26, 2012 Fox Decls. (Defs.' SJ Exs. 7, 17, 20-31, 46, 47, 50, 54-56, 59, 60). The total number of pages of those twenty-two exhibits is 730,

making an average of 33.18 pages per deposition exhibit used in the summary judgment briefing. One particular summary judgment exhibit, Exhibit 46, had 350 pages, more than double the number of pages of the next closest exhibit, Exhibit 25, which had 167 pages. Omitting the 350 pages of Exhibit 46 as an outlier, the average number of pages for the remaining twenty-one exhibits is 18.09 (380 pages divided by twenty-one exhibits). Based on this sample of deposition exhibits, it is reasonable to assume an average of twenty pages per deposition exhibit. Multiplying 390 deposition exhibits by twenty pages per document equals 7,800 pages.

Next, I assume that for each deposition, six copies are reimbursable (one for Plaintiffs' counsel, one for Lane Powell's counsel, one for Norling's counsel, one for the witness, one for the witness's counsel, and one for the court reporter; any additional copies would be only for the convenience of counsel). 7,800 pages multiplied by six copies is 46,800 pieces of paper. Lane Powell charged $0.15 per page for copies. Ex. 7 to June 20, 2013 Rothauge Decl. 46,800 pieces of paper at $.15 per page is $7,020. This is nowhere near the $27,014.92 amount sought by Defendants.

The Court's docket shows that from the date the Complaint was filed on May 26, 2011, Defendants filed a total of 2,408 pages of court documents. This includes every filing made by Defendants, including stipulated motions to extend time, motions to withdraw as counsel, and all of the pages of documents submitted in connection with the Bill of Costs, including the 399 pages in Exhibit 6 to Rothauge's June 20, 2013 Declaration that are mostly undecipherable. Assuming the same $0.15 per page copy fee that Lane Powell charged, the cost to produce one copy of these 2,408 pages is $361.20. Because of electronic filing, no paper copies are printed or

13 - OPINION & ORDER

mailed to the opposing party. The only paper copy required is the Judge's Copy submitted to the Court, and then only if the submission is ten pages or more.[8] Even assuming that each Defendant printed and retained a paper copy of all court filings, and that the law firms for each Defendant printed and retained a copy, the total is $1,806 ($361.20 for the Judge's Copy, $722.40 for the copies for two Defendants, and $722.40 for the copies for two law firms).[9] Any costs for additional copies of court filings can be attributed only to those made for the convenience of counsel or some other non-compensable purpose.[10]

Each Defendant also likely printed a copy of all of Plaintiffs' court filings given that service is by electronic filing. The total number of pages of court documents filed by Plaintiffs is 1,152. At $0.15 per copy, the cost to print one copy is $172.80. Assuming again, that each Defendant and each law firm for each Defendant desired a paper copy of all of Plaintiffs' filings, the total cost for four copies is $691.20.

I also assume that Defendants' counsel likely printed a copy of the Court's two written Opinions & Orders and provided a paper copy to their clients. Four copies of forty-seven pages at $0.15 per page is $28.20. I further assume that there was additional printing or copying related to subpoenas or other aspects of the litigation. Even so, I cannot fathom how Defendants arrived

---

[8] My total of 2,408 pages includes many filings under ten pages for which no Judge's Copy is required.

[9] At the beginning of the case, both Defendants were represented by the same counsel but for ease of computation, I assume there were separate counsel throughout the case.

[10] Moreover, although Defendants state that their draft summary judgment motion which they prepared but did not file given the Court's ruling in April 2013, was sixty-seven pages, there was no need to print a Judge's Copy or other copy because it was never filed. Any other copies were presumably drafts or working copies printed for counsel's convenience.

14 - OPINION & ORDER

at their copy and printing cost requests of $27,014.92 for Lane Powell's internal copying and

$13,286.42 for other copying, for a total of $40,301.34 in copying and printing costs.

The documents supporting the $13,286.42 request for "document production copying and

processing" include unexplained and non-reimbursable expenses under 28 U.S.C. § 1920(4).  For

example, while payments to third-party vendors for conversion of documents into a different

format may be compensable costs under the statute, the personnel time spent on this task is not

reimbursable.  Icebreaker Ltd. v. Gilmar S.p.A., No. 03:11–CV–00309–BR, 2013 WL 638926, at

*8 (D. Or. Feb. 20, 2013) (disallowing labor cost for scanning documents because such costs are

considered part of an attorney's overhead) (citing  Hunt v. City of Portland, No. 03:08-

cv–00802–AC, 2011 WL 3555772, at *12 (D. Or. Aug. 11, 2011)).  Thus, for example, charges

for tasks such as "Litigation Support Project Mgmt Time" billed by DTI on June 1, 2012 are not

recoverable.  Ex. 5 to June 20, 2013 Rothauge Decl. at 3 (seeking $23.75 for such time); see also

id. at 4 ($47.50 for "Lit Support/Technical Time"); 15 ($237.50 for "Technical Time" and $350

for "Hand Time" for tasks such as organizing the number of sets and inserting into folders); 26

($95 for "Technical Time").  Other charges which appear unrecoverable include monthly user

fees and monthly storage fees, and something else noted as "iConect" creation and fees.  Id. at 30,

32.

Additionally, while I understand the need to convert documents into different formats

such as TIFF, some functions such as "Equivio Processing" and "Native Review Processing" are

unexplained as to the nature of the processing and why they were needed in addition to other

conversions.  More importantly, in addition to charges for conversion to a TIFF or other

15 - OPINION & ORDER

electronic format, Defendants seek reimbursement for a staggering number of copies when the

conversion to electronic format should be in lieu of printed copies.  As I understand the printing

term "blowback," it means "[t]he process of printing document images and scanned files to hard

copy in mass."[11]  My count of the number of "blowbacks" charged by the third party vendors is

39,767.  Id. at 15, 16, 26, 28, 33, 34.  At $0.15 per page, the $27,014.92 sought for the internal

Lane Powell copies means that Defendants seek reimbursement for approximately 180,100

copies internally printed by Lane Powell.  If an additional 39,767 pages are added, the total

number of copies/printed pages at issue is roughly 219,867.

Based on my calculations above, which are generous, approximately 63,636 pages of

documents are related to deposition exhibits, court filings by parties, and the Court's two

opinions and orders.[12]  Even if I increase this number by an additional 10% to account for other

printing/copying expenses, the total is 69,999 representing somewhere between 31% and 32% of

the 219,867 copies and printed pages Defendants claim.  Even if I double the 63,636 pages to

127,272, this is still less than 58.5% of what Defendants claim.

Plaintiffs ask the Court to subtract the entire amounts sought by Defendants for the

internal Lane Powell copy costs and the photocopying expenses paid to the third-party vendors

because, as noted above, Plaintiffs contend that these expenses are unexplained both as to a

description of the documents at issue and their purpose.  As I explained above, I agree with

---

[11]  http://www.expertglossary.com/ediscovery/definition/document-blowback

[12]  46,800 pages for the deposition exhibits as explained above; 2,408 pages filed in court
by Defendants multiplied by 5 copies is 12,040; 1,152 pages filed in court by Plaintiffs
multiplied by 4 copies is 4,608; and 4 copies of 47 pages of the Court's opinions is 188, for a
total of 63,636.

Plaintiff that the explanations are largely inadequate and are not saved by a conclusory assertion that the documents were necessary to the case. However, it is clear that Defendants incurred significant expense for copying and printing documents which were necessarily used in the litigation. Based on my calculations and explanations above, I award the following:

(1) $5,159.07 of the $13,286.82 requested under 28 U.S.C. § 1920(4) for fees for exemplification and the costs of making any copies of any materials. I arrived at this sum by adding together the costs for TIFF conversion, OCR, PDF conversion, electronic numbering, matching Bates numbering, scanning, and costs for CD/DVDs. I omitted other charges as non-reimbursable or unexplained.

(2) $9,750 of the $27,014.92 requested under 28 U.S.C. § 1920(3) for the internal Lane Powell copy costs. I arrived at this sum based on my calculations above which showed that 63,636 copies were reasonably related to deposition exhibits, court filings, and court opinions. I then increased this to 65,000 for other copy costs likely to have been incurred in the litigation. I multiplied the 65,000 figure by $0.15 per page charged by Lane Powell for a total of $9,750.

B. Deposition Costs

Plaintiffs make two separate objections to costs related to depositions. First, they object to $13,668.75 for costs for videotaped depositions where Defendants have also requested the cost for a paper or e-transcript. Unfortunately, as explained above, Plaintiffs fail to explain how they arrived at the $13,668.75 figure. Second, they object to $5,818.50 for costs associated with a deposition that they contend was not used in the case and was not relevant to any issue which resulted in a favorable disposition for Defendants.

17 - OPINION & ORDER

1.  Videotaped Depositions

Plaintiffs are correct that in this District, many Judges have disallowed the video-related deposition costs when recovery for a written or e-transcript is also sought.  E.g., Icebreaker, 2013 WL 638926, at *6 (disallowing recovery for duplicative video deposition expenses and distinguishing cases which have allowed that cost); Pullela v. Intel Corp., No. 03:08-01427-AC, 2010 WL 3361089, at *3 (D. Or. Aug. 25, 2010) (denying costs for videographer's deposition charges because "allowing recovery of the cost incurred for both the court reporter's transcript and a separate videographic record of depositions duplicates deposition costs without purpose"), aff'd, 467 F. App'x 553 (9th Cir. 2012).  Though there have been exceptions made to this rule, I agree with the Judges who have generally found these expenses unnecessarily duplicative and incurred primarily for the benefit of counsel.  See Johnson v. City of Portland, No. 03:11-cv-00982-HZ, Op. & Ord. at 6-7 (D. Or. Aug. 2, 2013) (denying video-related deposition costs when sought in addition to stenographic costs).

In their response to the objection, Defendants state that because every deponent they deposed was outside the Court's jurisdiction, the deponents' testimony could come into evidence at trial only through their videotaped depositions.  Though they acknowledge that potential plaintiff representatives Bradley Kruper and Eric Baty were two possible exceptions to this rationale, they explain that regardless of the jurisdictional issues, the credibility of these witnesses' testimony was "sharply disputed," necessitating videotaped depositions.

I agree with Plaintiffs.  While the testimony of the deponents could not be compelled because they were outside the Court's jurisdiction, that does not mean that a videotaped

18 - OPINION & ORDER

deposition was necessary.  Rather, long before the advent of video technology, lawyers would have a "stand in" take the place of the witness on the witness stand and with lawyer and "witness" each possessing a copy of the written transcript of the witness's deposition, would proceed to present the testimony in this fashion.  Many lawyers use this technique today.  While the videotaping of certain select critical witnesses may be prudent in some cases, Defendants provide no explanation for why videotaping fourteen deponents along with ordering the videotapes of Norling and Lane Powell partner Milo Petranovich, whose depositions were presumably taken by Plaintiffs, was necessary.  Thus, I sustain Plaintiffs' objections other than to the videotaping costs related to the depositions of Bradley Kruper and Baty.[13]

Determining the proper deduction from Defendants' request is another matter, made more complicated by Defendants' inexact records.  In the $101,107.14 Bill of Costs, Defendants seek $44,663.82 for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."  Ex. 1 to Defs.' Stmt in Supp. of Bill of Costs.  In their Summary, Defendants list various deposition-related costs for transcripts, both print and video.  Ex. 1 to June 20, 2013 Rothauge  Decl. at 3-4.  The total of the separate entries is consistent with the $44,663.82 amount sought in the cost bill.  Id.

Exhibit 7 to Rothauge's June 20, 2013 Declaration contains the supporting invoices.  Ex. 7 to June 20, 2013 Rothauge Decl.  The invoices, however, do not support the $44,663.82

---

[13]  I agree with Judge Acosta that the credibility and demeanor of witnesses is generally at issue in any case and thus, the routine award of videographic-related deposition fees on top of stenographic fees should not be allowed.  Pullela, 2010 WL 3361089, at *3.  However, I recognize the unique positions held by Bradley Kruper and Baty and conclude that recording their depositions stenographically and by videotape was reasonable in this case.

amount shown in the Summary or requested in the Bill of Costs.  Notably, there is no receipt for

the following claimed costs:  (1) $385.50 for "deposition transcript" paid on 12/00/2011; (2)

$270 for "deposition transcript: exhibits to depositions" paid on 3/00/2012; (3) $1,947.50 for the

video of Paul Andre deposition paid on 9/00/2012; (4) $1,197.50 for the video of Cheryl Sabnis

deposition paid on 9/00/2012; (5) $2,377.40 for the deposition transcript of Steven Mueller paid

on 1/00/2013; and (6) $1,530 for the video of Steven Mueller deposition paid on 1/00/2013.  Ex.

7 to June 20, 2013 Rothauge 2013 Decl.  Additionally, there were two receipts in Exhibit 7 that

were not itemized in the Summary:  (1) $50 for the video of Petranovich's deposition; and (2)

$100 for the video of Norling's deposition.  Id. at 5, 6.  The total amount of costs related to

depositions and actually supported by the invoices is $37,105.92, not $44,663.82.

I subtract the following video-related deposition costs:  (1) $1,698.75 for Brenda

Buoniauto; (2) $1,687.50 for Hannah Lee; (3) $1,757.50 for Lisa Kobialka and Kris Kastens; (4)

$2,335 for James Hannah; (5) $1,381.25 for Steven Mueller; (6) $1,018.75 for Phil Baldwin; (7)

$1,165 for John Gabbard; (8) $1,051.20 of the $2,577.82 paid for Matt LeBlanc and described on

the invoice as video-related costs; (9) $1,205 of the $2,900.50 paid for Steven Brandon and

described on the invoice as video-related costs; and (8) the $150 for the copies of Petranovich's

and Norling's depositions.[14]  The total deducted is $13,449.95.  Subtracting this amount from

$37,105.92 leaves an appropriate deposition-related award of $23,655.97.

/ / /

---

[14]  I did not expressly deduct the video-related costs of $1,947.50 for the Paul Andre
deposition or $1,197.50 for the Cheryl Sabnis deposition because as explained in the preceding
paragraph, I have already reduced the total sum for depositions to account for the lack of
supporting documentation, including these particular video-related costs.

2.  Unnecessary Depositions

Plaintiffs state that Defendants seek $5,818.50 in connection with depositions they did

not use in the case and which were not relevant to any determinative issue.  28 U.S.C. § 1920(2)

allows recovery of fees for "printed or electronically recorded transcripts necessarily obtained for

use in the case[.]"  28 U.S.C. § 1920(2).  The costs of taking depositions and obtaining

deposition transcripts is properly taxed if the deposition is introduced into evidence or used at

trial for impeachment or cross-examination.  Malbco Holdings, LLC v. AMCO Ins. Co., No.

03:08-cv-00585-ST, 2010 WL 2572849, at *17 (D. Or. June 22, 2010).  Additionally, deposition

costs may be taxed even if the deposition is not used at trial if "taking the deposition was

reasonable as part of the pretrial preparation of the case, rather than for the convenience of

counsel, or if the deposition was required for a dispositive motion."  Id. (explaining that to be

taxable, depositions must not be merely for discovery).  Costs for depositions which appear to be

duplicative may be properly denied.  Birkes v. Tillamook County, No. 03:09-cv-01084-AC, 2013

WL 796650, at *4 (D. Or. Mar. 4, 2013).  Plaintiffs also cite to a 2012 decision by Judge

Mosman for the proposition that awardable costs may be limited to those related to issues on

which the Defendants prevailed regardless of whether the depositions may have been useful or

relevant to other issues.  AHM v. Portland Pub. Schs., No. 03:11-cv-00739-MO, Op. & Ord. at 3

(D. Or. Sept. 5, 2012).

Plaintiffs argue that Defendants cited only to the deposition of Paul Andre in connection

with their winning arguments on the standing and King & Spaulding fee issue.  They suggest that

the AHM case provides a basis for denying all but the $1,736.95 cost for Andre's deposition and

the written transcript.  However, they then add that "in the interest of avoiding unnecessary contentiousness," they limit their request to the $5,818.50 for costs related to depositions not cited to by Defendants on any issue at all.  Pls.' Objs. at 8.

Whether or not Plaintiffs' argument has merit, their failure to direct me to what deposition costs they contend comprise the challenged amount of $5,818.50 is fatal to their argument.  They cite only to pages 3-4 of the Summary which is a list of all the depositions.  It is not the Court's burden to comb back through the record in this case to determine what depositions Defendants actually cited to and relied on in support of or in opposition to various motions and arguments. Without a further explanation of the amount, I deny the objection and make no additional deductions to the deposition-related costs.

C.  Summary

I award what I determine to be the following reasonable costs:

(1)  fees of the Clerk:  $404.08; (2)  fees for service of summonses and subpoenas: $8,555.57; (3)  fees for printed or electronically recorded transcripts necessarily obtained for use in the case:  $23,655.97; (4) fees and disbursements for printing:  $9,750; (5) fees for witnesses: $6,050.33; and (6) fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case:  $5,159.07.  The total award is: $53,575.02.

/ / /

/ / /

/ / /

22 - OPINION & ORDER

CONCLUSION

Defendants' Bill of Costs [109] is granted in part and denied in part.  Defendants are awarded $53,575.02 in costs.

IT IS SO ORDERED.

Dated this _____ day of _August_____ , 2013

_____
Marco A. Hernandez
United States District Judge

23 - OPINION & ORDER